Argued October 28, decided November 26, 1912; rehearing denied
January 7, 1913.

## PAINE *v.* MILTON IRRIGATION COMPANY.

(127 Pac. 774.)
(128 Pac. 997.)

### Waters—Irrigation Companies—Dealings With Directors.

1. Directors of an irrigation corporation, formed for the
benefit, principally, of the lands of its promoters, could deal with
the corporation and buy water rights therefrom as long as such
dealings were open, fair, and free from fraud, and on the same
terms offered to others.

### Waters—Irrigation Companies—Selling Water Rights Out of the State.

2. A provision in the articles of incorporation of an irriga-
tion company that the water is for use upon lands in Union
County can only be taken advantage of by stockholders, and
probably then only when prejudiced thereby, and is a limitation
that may be waived, and an objection to the sale of water to
be used out of the State which is made only as a means to avoid
the whole proceeding of the board in providing for sales, and
not to avoid a wrong to the corporations or to stockholders, is
without merit.

### Waters—Irrigation Companies—Directors Dealing With the Corporation—Evidence.

3. In a suit by stockholders of an irrigation company to
enjoin the directors from selling water to themselves and other
stockholders perpetually for $3.00 per acre and $2.00 per year
annually for maintenance, evidence held to show that such sales
were unreasonable and confiscatory as to plaintiffs, who were
not land owners in such irrigation district, and unfair as to
the corporation.

### Waters—Irrigation Companies—Sale of Water Rights—Validity—Evidence.

4. In a suit by stockholders of an irrigation company to
enjoin the directors from selling water rights to themselves and
other stockholders on the ground that the sales were unreason-
able and confiscatory as to plaintiffs, who were not land owners
in the irrigation district, evidence of the quantity of water to
which the corporation had title, and of the market value of

the water, and the cost of the plant of the company, and expenses of maintenance and operation, was admissible as bearing on the reasonableness of the sales.

**Waters—Irrigation Companies—Sales of Water Rights—Ratification.**

5. Where the terms of sale by an irrigation company of water rights pursuant to resolutions of the board of directors are unfair to the corporation, the terms must be authorized or ratified by the stockholders before the board may make sales thereunder, but purchases consummated prior to a suit by stockholders who are not land owners in the irrigation district to enjoin sales will stand as binding on the corporation, except sales made to the directors.

From Umatilla:  Gilbert W. Phelps, Judge.

Statement by Mr. Chief Justice Eakin.

This is a suit by F. W. Paine and J. G. Paine against The Milton, Freewater & Hudson Bay Irrigation Company, a corporation, W. C. Gallaher and Mary Gallaher, his wife, M. O. Beauchamp and Mary Beauchamp, his wife, J. B. Krumbah and Mary Krumbah, his wife, F. B. Smith and Mary Smith, his wife, J. W. Jones and Mary Jones, his wife, G. M. Lockwood and Mary Lockwood, his wife, F. C. Morley and Mary Morley, his wife, J. E. Boyer and Louise H. Boyer, his wife, Fred Griesler and Mary Griesler, his wife, R. E. Record and Mary Record, his wife, Herman Markman and Mary Markman, his wife, W. F. Gentry and Mary Gentry, his wife, R. H. Wellman and Mary Wellman, his wife, F. J. Meihoff and Mary Meihoff, his wife.

The facts as disclosed by the record are as follows:

The defendant company was incorporated the 22d day of January, 1903, under the laws of Oregon, for the purpose of diverting water from the Walla Walla River and its branches for irrigation and other purposes, to construct dams, ditches, and reservoirs for that purpose, and particularly to take water not otherwise diverted or used, to be applied in winter and spring irrigation,

Sig.  19

namely, between October 15th and the following May
15th, for use, sale, rental, or distribution, and to collect
rents, rates, and compensation for the same, or for its
own use for purposes of irrigating lands lying in said
county (Umatilla), and for supplying water for house-
hold and domestic consumption on ranches and dry land
within said county; and for that purpose appropriated
a large amount of water, namely, 6,000 inches from said
stream.   The capital stock is $5,000, consisting of 50
shares of the value of $100 each.   The stock was all sub-
scribed on and prior to May 31, 1904, mostly by farmers
owning lands under the ditch.   Seven shares were sub-
scribed by C. J. Bowers, and seven shares by the plain-
tiffs, Paine Bros.   Soon thereafter F. W. Paine, a mem-
ber of the firm of Paine Bros., purchased the seven shares
subscribed by Bowers, and from Shaw one share, and
plaintiffs now own those 15 shares; but they own no land
to which the water can be made available.   Much of the
stock in defendant corporation, other than that owned by
plaintiffs, has been transferred and the shares divided
into fractions, one transfer being of 1-48 of one share.
The expense of the construction of the ditch was about
$9,000, and the extension and maintenance of the same
has far exceeded that sum.   The record does not show
how much water has been sold annually, but sales have
been made at an annual rental of $1.50 per acre, and the
receipts of the company have not been sufficient to pay
the expense of maintenance; and in April, 1911, the com-
pany was in debt about $4,000.   With a view to meet
said indebtedness and to accumulate a fund of $2,000 for
betterments, the directors offered to sell perpetual water
rights to the extent of 2,000 inches at $3 an acre, subject
also to an annual maintenance charge of $2 an acre, or
so much thereof as should be needed for that purpose,
and agreed that no greater or larger sum than $2 per acre
per year should ever be charged a purchaser for main-

tenance or ditch fee, and that the company should reduce the amount thereof every year to the actual and necessary cost of maintenance; and that in case of any unusual damage or break in the main canal, or any lateral, by flood or otherwise, resulting in damage or loss to the company or others, the repair of such canal or lateral, and the payment of all damages resulting therefrom over and above the said $2 per acre per annum, should be borne pro rata by the water users. Many sales of water were made under that offer, four of the directors being also purchasers upon the same terms as others, and deeds were issued accordingly. The policy of the company was to sell only to stockholders—they being entitled to no water on the credit of the stock alone—and the amount of stock owned by any one had no relation to the amount of water he should be allowed to purchase, or to the price to be paid; for instance, John E. Boyer owns less than one share and purchased 115 inches of water, and Markman owns one-fourth of a share and purchased 140 inches, and others in the same or greater proportion. All sales were made upon the basis of 1 inch of water per acre; the stock being valued at this time from $300 to $400 a share. These sales were all made without the knowledge of or notice to the plaintiffs. (In the pleadings and briefs the "cubic inch" is used as the basis of measurement, probably as a fractional part of one cubic foot per second; but a cubic inch per second would be only 25-1000 of a miner's inch. However, we will assume that the miner's inch, under six-inch pressure, was intended instead of the cubic inch, as it is so described in the contract of sale.)

The trial court made findings in favor of defendants and dismissed the suit, and plaintiffs appeal.

REVERSED.

For appellant there was a brief over the names of *Mr. T. P. Gose* and *Mr. Timothy A. Paul* and *Messrs.*

*Carter & Smythe,* with oral arguments by *Mr. Gose* and *Mr. Paul.*

For respondents there was a brief over the names of *Messrs. Lowell & Winter,* and *Messrs. Dunphy, Evans & Garrecht,* with oral arguments by *Mr. Stephen A. Lowell* and *Mr. W. H. Dunphy.*

Opinion by MR. CHIEF JUSTICE EAKIN.

Three questions are presented by this appeal: (1) Were the sales of water to the directors void? (2) Was the sale of water to Boyer to be used on lands outside of the State of Oregon void? (3) Was the sale of water at the price and on the conditions named unreasonably low or unfair to the plaintiffs and the defendant corporation?

1. First, as to the sale of water by the board of directors to members of the board. Although a director is not absolutely prohibited from dealing with the corporation through the board, yet such dealing must be open, fair, and free from fraud or oppression, and must be in the interest of the company; but if made in good faith and secures to the individual no undue or unjust advantage, and the interest of the individual and the duty of the official work in unison for the welfare of the corporation, it is valid. This corporation was formed for the purpose of obtaining water for irrigation for the benefit, principally, of its promoters; and, if the officers were precluded from dealing with the corporation, its very purpose would be defeated. The statement of the case is a complete answer to the contention of appellants. The only question open to consideration is: Was there any advantage taken or sought by the directors, or did they deal with the corporation on the same terms offered to others, and was it fair and honest to the corporation? 2 Thompson, Corporations, Sections 1224, 1225, 1226; Cook, Corporations, Section 653. And that depends upon the reasonableness of the terms of sale.

2. Second, as to the sale of water to be used on land outside of the State. The provision in the articles of incorporation that the water is for use upon lands in Umatilla County cannot be taken advantage of by any one other than stockholders, and probably they have no ground for complaint where they are not prejudiced thereby. It is a limitation that may be waived. The sale to Boyer, who was a stockholder, of 115 inches, to be used on land in Washington, was to the advantage of the corporation, there being no stockholder demanding the water so sold, and plaintiffs' objection to the sale to Boyer is made only as a means to avoid the whole proceeding of the board in providing for sales, and not as a wrong to the corporation or to plaintiffs, and we think is without merit.

3. The third question is more difficult, namely, Was the action of the board in offering to sell to themselves and other stockholders permanent water rights, upon the terms named, reasonable and fair to the corporation and to plaintiffs? There is great conflict in the testimony between the witnesses for plaintiffs and those for defendants as to the value of the permanent water right; plaintiffs' witnesses contending that it is worth $50 per acre, while the witnesses for defendant testify that $2 or $3 per acre is its full value, taken in connection with the $2 per acre annual maintenance charge and the assumed liability to repair washouts and to pay damages to persons injured by the washouts. The $2 per acre maintenance charge, if required each year, would be equal, at 6 per cent interest per annum, to a present cash investment of $33.33 per acre; and the other liabilities, although incapable of a cash valuation, might be considerable. The contract precludes the possibility of profit to the company, though it may be a possible assurance to the stockholders of their water right without additional charge to them. The power or right of the

directors to sell perpetual water rights is not disputed by plaintiffs.

It is alleged in the complaint that the defendant corporation appropriated 6,000 inches of water. In plaintiffs' brief it is contended that the capacity of the ditch does not exceed 2,000 inches, and that there is not more than 2,000 inches of water in said streams available, except in periods of freshets, and there is some evidence to that effect, although no evidence is given of measurements of the capacity of the ditch or of the available water. At most, it appears that the ditch will not carry more than 3,000 or 4,000 inches of water, and there may not be more than that amount of surplus water available to it. The company has not paid any dividends; and if the water available to it, or the capacity of the ditch is only 2,000 inches, there is no possibility of profit to the company, in which case these sales would amount to a confiscation of plaintiffs' interest in the company. These matters are not in controversy, except that they are important in considering the effect upon the possibility of profits to the company in case of a sale of perpetual water rights to the extent of 2,000 inches of water.

It is difficult to compare the value of the use of irrigation water from October 15th to the following May 15th only each year, with the value of water during the irrigation season proper, or to determine the actual value of the former. Benefit is derived from it, and fair results as to most crops are obtained; but there is but little evidence in the case from which such values can be found other than the opinions of the parties in interest in the case. The $3 per acre for a perpetual right would certainly be a small price according to the benefit derived from it, even as compared with the expense of electric pumps or artesian water; but the $2 per acre per annum maintenance charge would increase the price manyfold, if that amount were definite and regular, but it is largely

contingent. There is no evidence before us as to what the expense of maintenance has been in the past, or the items that enter into it. If the annual rental of $3.50 per acre, which Paine testifies the Burlingame ditch receives, which is three or four miles from the Hudson Bay ditch, on similar land and for a similar use, is taken as a basis, at 6 per cent interest a perpetual right would be worth $58 per acre.

Pumping plants are used quite generally in that country where water cannot be had otherwise; and the people using water from defendant company's ditch often supplement it later in the season with pumps. Those that use electric pumps are at an expense of from $3 to $4 a year for power alone for 10 or 20 acre tracts, and the expense of installing the plant ranges from $500 to $1,000. This does not include the expense of establishing the electric line to the farm, which is also at the expense of the farmer. $3 a year would be interest at 6 per cent on an investment of $50 per acre, to which must be added the price of the plant. Of course due allowance must be made for the fact that the pump would furnish water during the dry season, but the evidence does not convince us that $3 an acre for a perpetual water right, plus the contingent maintenance charge not exceeding $2 an acre per year, is the market or reasonable value of a permanent water right; the $3 being equal to $.18 per acre per year. No effort was made by the defendant directors to ascertain the market value of or the highest price obtainable for the water from any source by competitive bidding or otherwise. The canvass made to ascertain the value was among the stockholders only, to whom it was desired to give a preference right to purchase; and they were allowed to fix the price, which was not a fair test of the market value.

The result of this deal is to eliminate the plaintiffs from any voice in the matter of prospective profits, and

the obligation of the directors in dealing for the corporation with themselves was ignored, and the disposition of a large part of the corporation's holdings in this manner was not fair and free from oppression or for the interest of the corporation and all the stockholders; and the other defendants, being also stockholders and having knowledge of the facts are in but little better position than the directors.

We conclude that the resolutions of April 19, 1911, and the one of April 25, 1911, should be held void and canceled.

The decree of the lower court is reversed, and the injunction allowed.        REVERSED.

---

Decided January 7, 1913.

## ON PETITION FOR REHEARING.

### (128 Pac. 997.

MR. JUSTICE EAKIN delivered the opinion of the court.

4, 5. The quantity of water to which the defendant corporation has title, or that is available to it, is not in issue only as it may tend to show the effect upon the corporation of the proposed sale of perpetual water rights to the extent of 2,000 inches, without possibility of income therefrom; and, although the complaint alleges that the quantity of water appropriated was 6,000 inches, that allegation is denied by the answer, which alleges that the amount of water available is variable and unstable, and that the amount sold is uncertain, and that, when the quantity is short, it must be accepted by the user pro rata. There is no pretense that 6,000 inches have been diverted or used, and it is contended by plaintiffs that not more than 2,000 or 3,000 inches have been diverted; that being the capacity of the ditch. The evidence tends to show that the capacity of the ditch may be between 2,000 and 4,000 inches, but

it is very indefinite upon that question. It is apparent that the corporation's right is only for surplus water, after certain claims are supplied and reservations made, and it is not definite what that surplus may be, but the title thereto could only be acquired to the amount actually diverted, which cannot exceed the capacity of the ditch. It seems to be conceded that the full quantity of the water is to be expected only during freshets, and not during the full period from October 15th to May 15th, the period for which the sales were made. These matters are not in issue in the case, nor is what is said in the opinion in relation thereto an adjudication of the amount of water to which the corporation has title, but is considered by the court as a condition that has a bearing upon the returns to be expected by the corporation, in view of the sale of perpetual water rights to the extent of 2,000 inches of water.

As to the market value of the water, it appears that the directors determined the value of the rights attempted to be sold by ascertaining from the prospective purchasers what they would be willing to pay. The statements of the witnesses of the value of the rights are largely opinion evidence, rather than a statement of facts upon which an opinion could be based. As evidence of the value, we also have evidence of the cost of water by means of pumps. The cost of the corporation's plant and the expense of maintenance and operation are elements to be taken into account in determining its value, and also the amount actually diverted by the defendant corporation must be considered in determining the cost of the water delivered; and these elements, with the other evidence, establish the fact that the terms of the sale authorized by the resolutions of the board are unfair to the corporation, and should be authorized or ratified by the stockholders before the board has power to make sales thereunder.

However, as the stockholders have a right to contract with the board, we will modify the former opinion to the extent that purchasers consummated prior to the commencement of this suit other than by directors of the corporation will be allowed to stand as binding upon the corporation.

The decree will be modified to that extent.

REVERSED: MODIFIED ON REHEARING.